```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                        FORT MYERS DIVISION


AMON DEAN RICHARDS,

                  Plaintiff,

vs.                                    Case No.  2:07-cv-758-FtM-29SPC

C.  ENGLAND,  P.  SKIPPER,  MR.
VARTIAINEN,  and A.L. JOHNSON, All
in their individual capacities,

                  Defendants.
_____
```

## ORDER OF DISMISSAL

I.

This matter comes before the Court upon review of the Motion to Dismiss (Doc. #29, Mot. Dismiss) filed on behalf of Defendants England, Skipper, Vartiainen, and Johnson. Plaintiff filed a Response (Doc. #31, Response). This matter is ripe for review.

Plaintiff, who is proceeding *pro se* and currently incarcerated, initiated this action by filing a Civil Rights Complaint Form (Doc. #1, Complaint) and attached exhibits (Doc. #1-2, Pl's Exhs A-A5; B-B4; C-C4; D-D4). The Complaint *sub judice* set forth a freedom of expression claim stemming from the jail's return of pictures mailed to Plaintiff in 2006; a due process claim arising from the Florida Department of Correction's administrative remedies; and a freedom of expression claim involving the jail's return of pictures mailed to Plaintiff in 2007. See Complaint at 18, 20. Upon initial review of the Complaint, the Court *sua sponte*

dismissed, without prejudice, Defendants Jackie Adams and John Doe. See Order at Doc. #12. The Court also dismissed Plaintiff's due process claim based on the inmate grievance procedure. Id. Plaintiff is proceeding in this action against Defendants Vartiainen, England, Skipper, and Johnson on his freedom of expression claims stemming from the return of the pictures mailed to Plaintiff in 2006 and 2007. See Complaint.

In general, Plaintiff alleges a violation of his rights protected under the First and Fourteenth Amendments occurred at Charlotte Correctional Institution when Defendant Vartiainen rejected Plaintiff's "commercially produced ordered photos." Id. at 14. Defendants England, Skipper, and Johnson also allegedly violated Plaintiff's constitutional rights by approving the denial of Plaintiff's grievances concerning the photographs. Id.

Specifically, Plaintiff alleges that on October 24, 2006, Plaintiff received a notice from the mail room that photographs mailed to Plaintiff would be disposed of, or, returned to the sender. Id. at 18. Plaintiff states the photographs pictured women in "bikinis, lingeries, and bathin-suits [sic]." Id. at 14. Plaintiff filed an informal grievance at the institutional level, which was denied. Id. at 18. In the denial, Defendant Vartiainen noted that "commercially produced photos are not allowed and will be disposed of or returned to sender." Id. Plaintiff filed an appeal to the warden; however, this appeal pertained to the response he received to the informal grievance and also requested

a review of his informal grievance on the merits. Id. at Pl's Exh. A2. Plaintiff received a response from the warden stating that "[t]here are no provisions in the rule for commercially produced photographs to be admitted to the institution. Should commercial photograph's [sic] be received [,] they will either be sent back or disposed of as contraband." Complaint at 18, Pl's Exh. A3. Plaintiff then filed an appeal to the Secretary of the Department of Corrections regarding the institution's "insufficient response" and the return of the pictures. Complaint at 19, Pl's Exh. A4. The Secretary of the Department of Corrections responded, stating that the response from the institution was appropriate. Complaint at 19, Pl's Exh. A5.

Similar to the incident in 2006, one year later on March 29, 2007, Plaintiff alleges that a family member informed him "that his photos were returned [sic] stating that they're nude[.]" Id. at 21. Again, Plaintiff states that he exhausted his administrative remedies. See id. at Pl's Exhs. D-D4. In the informal grievance, Plaintiff complained that on three occasions the mail room at Charlotte Correctional returned pictures to his family members on the basis of nudity. Pl's Exh. D. Plaintiff did not raise any issue with regard to notification in the grievance, rather he asserted that the jail's return of these pictures violated Florida Administrative Rule 33-210.101(c) because "the mail room cannot simply declare photos nude . . . because the models are scantly [sic] clad." Id. In response, an officer from Charlotte

Correctional explained that Rule 33-210.101(c) prohibits photographs that are "[n]ude . . . or photographs which [sic] reveal genitalia, buttocks, or the female breast." Id. Plaintiff appealed the response to his informal grievance, arguing that the officer who responded to his grievance was not the officer who viewed the photographs in the mail room and mail room "decided that photos of scantly [sic] clad models [were] nude." Pl's Exh. D2. The appeal was denied, after the assistant warden contacted the mail room and was informed that Plaintiff's photographs did not comply with Rule 33-210.101(2)(c). Id. Plaintiff then filed an appeal to the Secretary of the Department of Corrections, arguing that the mail room is "discriminately [sic] returning photos." Id. at D3. After contacting the institution, the Department of Corrections denied Plaintiff's appeal. Id. at D4. Based on the responses to his grievances Plaintiff received from Charlotte Correctional and the Department of Corrections, he alleges that his due process rights were violated. Complaint at 20. Plaintiff seeks monetary damages and expenses as relief. Id. at 22.

II.

Defendants first argue that the Court should dismiss the action for Plaintiff's failure to comply with Fed. R. Civ. P. 8. Mot. Dismiss at 3-4. In Response, Plaintiff disagrees, arguing that he complied with Rule 8. Response at 2-3. Alternatively, Plaintiff argues that if the Court determines the Complaint does not comply with Rule 8, then he requests permission to file an

Amended Complaint. Id. Considering the Court's responsibility to liberally construe *pro se* pleadings, the Court finds Plaintiff's Complaint complies with the Federal Rules of Civil Procedure 8 and will address the merits of the case.

In the Motion to Dismiss, Defendants raise qualified and/or sovereign immunity as an affirmative defense. See Mot. Dismiss at 9-13. Defendants also argue that the Complaint fails to state either a freedom of expression or a due process claim. Id. at 5-6. Specifically, with regard to the commercially produced photographs mailed to Plaintiff, Defendant Vartiainen explains that in 1995 the Florida Department of Corrections (hereinafter DOC") instituted Florida Administrative Code Rule 33-501.401, which prohibited inmates from purchasing or receiving commodities or property, other than publications, from sources outside of the DOC due to security concerns. Id. at 6. The rule allows inmates to receive reading material, such as, "'publications, including, books, newspapers, magazines, brochures, flyers, and catalogues, calenders and any other printed materials.'" Id. However, under Rule 33-501.401, personal and commercially reproduced photographs are not publications and will not be approved or issued to inmates as admissible reading material. Id. Thus, Defendant Vartiainen argues that Plaintiff's commercially produced photographs were rejected pursuant to this DOC Rule. Id. at 7.

Additionally, with regard to the photographs that were mailed from Plaintiff's home, Defendant Vartiainen refers the Court to

Rule 33-210.101, pertaining to inmates' receipt of photographs. Id. at 6. Defendant states that inmates are permitted to receive photographs in routine mail correspondence pursuant to this rule; however, photographs that "depict nudity or reveal genitalia, buttocks, or the female breast" are not permitted. Id. at 7. Defendant asserts that Plaintiff's second set photographs were rejected because they depicted nudity in violation of Rule 33-210.101. Id. With regard to whether the photographs depicted "nudity," Defendant contends that "the Court should show 'substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining a corrections system's legitimate goals and determining the most appropriate means to accomplish them.'" Id. (citing Overton v. Bazzetta, 539 U.S. 126 (2003)). Defendants Johnson and Skipper also argue that Plaintiff attempts to attribute liability on them under the theory of *respondeat superior* as they "'supervise the governance' of correctional institutions." Id. (citing Complaint at 17-18). Defendants state that supervisory officials are not liable for the actions of their subordinates on the basis of respondent

superior or vicarious liability in § 1983 actions.[1]  <u>Id.</u> at 9 (citations omitted).

In Response, Plaintiff alleges that inmates were permitted to receive commercially produced photographs until late in 2006. Response at 4.  Plaintiff argues that if the DOC prohibited "inmates from receiving commercially produced photographs, [then] officials at the institution . . . would not have approved and issued a check from his account for this reason." <u>Id.</u> at 5. Plaintiff asserts that Defendants are acting arbitrarily and have not shown how commercially produced photographs disrupt the governance of the institution. <u>Id.</u> at 6. With regard to the 2007 photographs, Plaintiff argues that his family member ordered the commercially produced photographs and then forwarded them to Plaintiff.  <u>Id.</u> at 6.   Plaintiff further argues that the photographs that were rejected "were non-obscene photos of strippers and rap video dancers in bikinis, lingeries [sic], g-strings, etc." <u>Id.</u> at 7. Plaintiff asserts that Defendant England is the "grievance coordinator" and should "'investigate and review'" inmate grievances. Response at 8. Plaintiff argues and

---

[1] With regard to Plaintiff's allegations that Defendants England, Skipper, and Johnson violated his due process rights for failing to take corrective action during the grievance process, Defendants contend that Plaintiff must first demonstrate that the inmate grievance procedure is a constitutionally protected interest. Mot. Dismiss at 8. Defendants argue that their actions or inactions did not amount to a violation of Plaintiff's due process right, and, as such, Plaintiff failed to state a claim against Defendants England, Skipper, and Johnson. Mot. Dismiss at 8. As discussed above, the Court previously dismissed this claim.

that Defendants Skipper and Johnson are liable for not "failing to correct the constitutional deprivation when pointed out by Plaintiff in a grievance." Id. at 9.  Further, "Plaintiff states that he unequivocally announced that he is suining [sic] Defendants in their individual capacity, as can be seen in Complaint." Id. at 10.

### III.

Title 42 U.S.C. § 1983 imposes liability on one who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws."  To state a claim under 42 U.S.C. § 1983, Plaintiff must allege that: (1) Defendants deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under the color of state law. Arrington v. Cobb County, 139 F.3d 865, 872 (11th Cir. 1998); U.S. Steel, LLC v. Tieco, Inc., 261 F.3d 1275, 1288 (11th Cir. 2001).

The First Amendment to the United States Constitution provides:

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or of the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

An inmates's First Amendment rights, however, are not without restriction. Lawson v. Singletary, 85 F.3d 502, 509 (11th Cir. 1996).  The Turner rule, adopted by the Supreme Court in Turner v.

Safley, 482 U.S. 78, 85 (1987), employs a reasonableness standard for evaluating prison regulations that may infringe on an inmates' constitutional guarantees: "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Id. at 89.  The Turner Court provides four factors in evaluating a regulation:  (1) whether there is a "valid, rational connection" between the regulation and a legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the asserted constitutional right that remain open to the inmates; (3) whether and the extent to which accommodation of the asserted right will have an impact on prison staff, inmates and the allocation of prison resources generally;[2] and, (4) whether the regulation represents an "exaggerated response" to prison concerns. See Turner, 482 U.S. at 89-91; Shaw v. Murphy, 532 U.S. 223, 229-30 (2001).

The Supreme Court subsequently reaffirmed the Turner standard in Thornburgh v. Abbot, 490 U.S. 401 (1989).  The Court agreed that prison officials could deny inmates incoming publication if they were deemed "detrimental to institutional security." Id. at 403. Affording officials with "broad discretion" is especially

---

[2]The Court must also consider the "ripple effect" of any accommodation.  See Turner, 482 U.S. at 90 (stating "[w]hen accommodation of an asserted right will have a significant 'ripple effect' on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of corrections officials.")

appropriate where "the regulations at issue concern the entry of materials into the prison." Id. at 416-17.

The Court "accords substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining a corrections system's legitimate goals and determining the most appropriate means to accomplish them." Overton v. Bazzetta, 539 U.S. 126 (2003); see also Bell v. Wolfish, 441 U.S. 520, 547 (1979). Hence, courts should defer to the judgment of prison officials given the "inordinately difficult undertaking" posed by modern prison administration. Turner, 482 U.S. at 85. See also Lawson, 85 F.3d at 510 (recognizing that management of prisons is complex and court's are ill-equipped to deal with such problems). This is particularly true where state penal facilities are involved. Newman v. State of Alabama, 683 F.2d 1312 (11th Cir. 1982); Smith v. Sullivan, 611 F.2d 1039 (5th Cir. 1980).[3]

IV.

Here, Plaintiff first alleges that Defendant Vartianinen improperly relied on the DOC Rule 33-210.101 to return his photographs, which Plaintiff admits in the Complaint depicted women "scantily clad." He argues that Defendants have not shown that the photographs "would disrupt the governance of the institution."

---

[3]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Defendants explain that the first set of photographs were returned pursuant to DOC rule 33-501.401, which permits inmates to purchase reading materials, *not* photographs, from a list of approved venders.  With regard to the second set of photographs, Defendants explain that the commercially produced photographs mailed from Plaintiff's home were returned because they violated the DOC's publication rule and "depicted nudity or revealed genitalia, buttocks, or the female breast."  Defendants refer the Court to DOC Rule 33-210.101, which governs mail correspondence.

The Court agrees with Defendants and finds the Complaint fails to state a claim.  To the extent Plaintiff challenges either of the DOC rules *sub judice,* the Court previously found, in a situation similar to this one, that Rules 33-501.401 and 33-210.101 did not violate the inmates' constitutional rights.  See generally Wood v. Vartiainen, Case No. 2:02-cv-626-FtM-29DNF, 2005 WL 2291723 (M.D. Fla. Sept. 20, 2005).  Again, the Court finds that the DOC rules referenced herein are reasonably related to the prison's safe governance of the institution.  A rationale connection exists between the package and mail policies and the DOC's interest in maintaining security within the institution.  The DOC rules merely place a limited restriction on incoming materials to the institution. Plaintiff admits that the photographs that were returned depicted women barely clothed, including "strippers and rap video dancers in bikinis, lingerie, and g-strings."  The Court

has previously deferred to the institution's decision makers, recognizing that such types of photographs may constitute a valuable trading commodity, theft, and potential violence in the volatile prison environment. Further, the Court defers to the institution when determining which photographs fall within the purview of Rule 33-210.101. The institution's response in this circumstance was not exaggerated. Plaintiff has access to a vast array of other reading materials and publications, so long as the items are in compliance with the DOC rules. Plaintiff's constitutional rights remain in tact as the Complaint fails to state a claim.

Plaintiff attributes liability to Defendants Skipper, England, and Johnson for not approving his grievances, or taking corrective action when he complained that the photographs were improperly returned. Because the Court finds that the Complaint fails to state a constitutional violation with respect to the photographs, there was no corrective action that these Defendants failed to take to rectify the alleged constitutional violation. Thus, the Court finds that the Complaint fails to state a claim against Defendants Skipper, England, and Johnson.

ACCORDINGLY, it is hereby

**ORDERED:**

1. Defendants' Motion to Dismiss (Doc. #29) is **GRANTED.**

2. The Clerk of Court shall: (1) terminate any pending motions, (2) enter judgment accordingly, and (3) close this case.

**DONE AND ORDERED** in Fort Myers, Florida, on this ___1st___ day of December, 2008.

_____
JOHN E. STEELE
United States District Judge

SA: alj
Copies: All Parties of Record